UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KELLIE G.,                                                    Case No. 2:21-cv-01879-AR

                Plaintiff,                         OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____

**ARMISTEAD, Magistrate Judge**

      In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Kellie G. (her last name omitted for privacy) challenges the Administrative

Law Judge's evaluation finding that fibromyalgia is not a severe condition, failing to identify

specific, clear and convincing reasons for discounting her subjective symptom testimony, and

finding the medical opinion of Dr. Megan Blunda, M.D., unpersuasive. The court agrees in part

with plaintiff and, therefore, the Commissioner's decision is REVERSED and REMANDED.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on December 3, 2018,

alleging disability beginning July 1, 2015. (Tr. 274.) Plaintiff also applied for Title XVI Social

Security Income (SSI) on December 3, 2018, alleging disability beginning July 2, 2015. (Tr. 276.)

Her claims were initially denied on April 22, 2019, and again upon reconsideration on February

12, 2020. (Tr. 103, 127, 149, 169.) Afterwards, plaintiff sought a hearing, which was held before

the ALJ on January 13, 2021. (Tr. 40.)

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step

sequential evaluation process.[2] At step one, the ALJ determined plaintiff has not engaged in

substantial gainful activity since September 22, 2015, the amended alleged onset date. (Tr. 18.)

At step two, the ALJ determined that she had the following severe impairments: degenerative

disc disease, dysfunction of major joints, reconstructive surgery of weight bearing joints, and

depression with anxious distress. (Tr. 18.) At step three, the ALJ determined that her

impairments singly or in combination did not meet or medically equal the severity of any listed

impairment. (Tr. 20.)

---

[1]      This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have
consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28
U.S.C. § 636(c).

[2]      To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20
C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not
disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481
F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

The ALJ determined that plaintiff has the residual functional capacity (RFC),

20 C.F.R. §§ 404.1545, 416.945, to perform light work with the following limitations: lift or

carry up to 20 pounds frequently and 25 pounds occasionally; can stand or walk with normal

breaks for a total of more than six hours in an eight-hour workday; can sit with normal breaks for

a total of more than six hours in an eight-hour workday; can perform pushing and pulling

motions with upper and lower extremities within the weight restrictions above; is limited to work

with routine repetitive tasks and simple decision-making; is limited to work with no more than

occasional interaction and close proximity to coworkers or supervisors; and should only be

minimally in direct contact with the general public. (Tr. 22.)

At step four, the ALJ determined that plaintiff cannot perform her past relevant work as a

caregiver or a bank teller. (Tr. 31.) With the RFC in hand, the ALJ found at step five that jobs

exist in significant numbers in the national economy that plaintiff can perform, including such

representative occupations as mail clerk, electronics worker, and assembler. (Tr. 32.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation

and citation omitted). To determine whether substantial evidence exists, the court must weigh all

the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v.

Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

Page 3 – OPINION AND ORDER

**DISCUSSION**

A.    ***Step Two – Whether Plaintiff's Fibromyalgia is Severe***

At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

The ALJ found that plaintiff had multiple severe impairments at step two but concluded that her fibromyalgia was "not severe." (Tr. 18.) As support for that conclusion, the ALJ referenced a single medical note that described the condition as stable, that there were no other objectively observed signs, and that her grip strength and fine motor skills were normal. (Tr. 18, citing Tr. 568, 949-50.) Plaintiff argues that the ALJ impermissibly assessed her fibromyalgia as non-severe on the basis that it eluded objective measurement. (Pl.'s Br. 5, ECF 19.) In plaintiff's view, this finding also was prejudicial because it negatively affected the ALJ's assessment of her subjective symptom testimony and the ALJ failed to consider her fibromyalgia symptoms when formulating her RFC as required under SSR 12-2p, *available at* 2012 WL 3104869, at 6. The Commissioner asserts that any step two error was harmless because (1) the ALJ continued the sequential analysis, and (2) plaintiff does not identify any credited limitations due to her

fibromyalgia that warrant a different outcome at step three or a different RFC finding. (Def.'s Br. 3, ECF 22.) The Commissioner's step two argument is correct.

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040,  1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). Whether fibromyalgia is designated as a severe or non-severe impairment, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments when formulating the RFC. SSR 96-8p. As the Commissioner correctly contends, step two was resolved in plaintiff's favor because the ALJ continued with the sequential analysis and any error at step two was harmless. *Buck*, 869 F.3d at 1049 (describing step two errors as harmless if an ALJ decides it in claimant's favor).

To the extent that plaintiff contends the ALJ erred in assessing her subjective symptom testimony and failed to consider her fibromyalgia symptoms consistent with SSR 12-2p when formulating her RFC, the court addresses those arguments below.

**B.**     ***Basis for Discounting Plaintiff's Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89

(9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that she cannot engage in full-time, competitive employment because of her physical and mental health conditions, including fibromyalgia, arthritis, foot, back, and hip surgeries, bulging discs, craniectomy, Chiari Malformations, and depression, anxiety, and lack of concentration. (Tr. 308.) Due to the pain she experiences in her neck and back, plaintiff alleges that some days she cannot reach her feet, bathe properly, bend her neck, lie on her back or her right side, look up or down for more than five to ten minutes, or stand for any length of time. (Tr. 322-23.) Plaintiff also alleges that she has a difficult time with anything more than basic instructions, and that she no longer handles stress well, sometimes resulting in a "meltdown" leaving her bedridden with a migraine. (Tr. 327.) Plaintiff also reported using a cane whenever she feels "unsteady," and has been using it since her hip replacement surgery in 2016. (Tr. 327.) In order to manage her conditions, plaintiff has been taking Lexapro, Indomethacin, Clonidine, Buspirone, Xanax, Tyzanadine, Oxycodone, Butal/Acetaminophen, and Albuterol. (Tr. 341.)

At the hearing, plaintiff reported that she uses paper plates in order to keep dishes to a minimum because she cannot stand for more than ten minutes before having to sit down to let her back relax. (Tr. 58-59.) She also reported using a cane on and off for the previous four years, and steadily for the past year. (Tr. 59.) She further testified that she cannot work full-time because her back would be "on fire" within a couple of hours. (Tr. 59.) Because of the pain in her back, she reclines four or more hours a day to relieve the pressure. (Tr. 59-60.) She then testified that, because of the arthritis in her hands, she often drops things. (Tr. 60.)

When asked about her mental health conditions, plaintiff testified that she has anxiety and does not deal well with the public or large groups. (Tr. 61.) She explained that her anxiety makes her cry and shake, gives her panic attacks, that it began in 2015, and has since worsened. (Tr. 61.) Following the death of her father in 2018, her condition began to significantly affect her day-to-day life. (Tr. 61-62.) She also testified that she has depression and an inability to handle changes in plans. (Tr. 62.) When asked how she deals with change, she testified that she cries through changes, and has never been good with change. (Tr. 62.) Plaintiff testified that, although she can handle basic, one- and two-step instructions, she would have difficulty with more complex instructions. (Tr. 62.) She stated that she does not handle stress well, and that she gets easily overwhelmed. (Tr. 62-63.) When dealing with stress stemming from conflicts with others, she testified that she usually breaks down, cries, and yells, a condition that she has had for ten years. (Tr. 63.) Plaintiff expressed that crowds overwhelm her. (Tr. 63.) Plaintiff said that she cannot concentrate on a task for more than 30 minutes because she gets bored; that she sets medication reminders on her phone, and that her daughter-in-law also reminds her to take her medication. (Tr. 64.) On bad mental health days, occurring three or four times a month, she is unable to get dressed, comb her hair, and cannot have anything touching her skin. (Tr. 65.) Lastly, she testified that she cannot lift a gallon of milk, that she does not sleep well, and experiences fatigue. (Tr. 66-67.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) her level of activity was inconsistent with her allegations; (2) her mental health conditions improved with treatment; and (3) her statements were inconsistent with her medical records. Plaintiff challenges that assessment.

1.  **Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict her testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted plaintiff's subjective symptom testimony because she drives, prepares her own meals, takes care of her dogs and cat, shops in stores, does not have problems getting along with others, plays board games and watches television, does her own laundry, and her grandchildren stay the night with her. (Tr. 22-23.) The ALJ also found that plaintiff does not have problems getting along with others because she sees her family regularly, relying on plaintiff's report that she Facetimed with her children and grandchildren during the week. (Tr. 22-23, citing Tr. 325.)

The ALJ's conclusions, however, do not take into account the limitations plaintiff testified to with regard to her daily activities. To begin with, although plaintiff does help take care of her pets, her testimony explains that that help entails letting her dogs in and out of the house and feeding them, and that her partner helps. (Tr. 322.) Further, engaging with family does

not undermine her testimony that she has difficulty dealing with the general public and large crowds. (Tr. 61.) It is also important to note that, although plaintiff's grandchildren have stayed overnight with her, it was less than twice a month, only one grandchild at a time, and that they are more of a help to her than she is to them. (Tr. 50.) When it comes to chores, plaintiff testified that she cannot do laundry without pain, often crying, and compensates by doing small loads, which takes longer. (Tr. 328.)

Additionally, the ALJ did not find that plaintiff spent a "substantial" portion of her day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by plaintiff, this reason fails to provide a specific, clear and convincing basis upon which to discount her subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

Here, the ALJ failed to explain how plaintiff's ability to perform daily activities described by her undermines plaintiff's testimony, and when the entire record is considered, the ALJ's conclusion is not supported by substantial evidence.

### 2.  Treatment

An ALJ may discount a claimant's mental health-related symptom testimony because she improved with treatment. *Niemi v. Saul,* 829 F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ

observed that the claimant's "mental health challenges appeared to improve with counseling and medication"). However, discounting a claimant's mental health related symptom testimony based on evidence of improvement may still result in harmful error. The Ninth Circuit cautions that when "discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Here, the ALJ relied in part on reports of the plaintiff's symptoms improving over time. (Tr. 23-29.) In the decision, the ALJ noted instances of plaintiff's progress and noncompliance, such as when she was medication noncompliant from July to September 2016, when she reported doing better in March 2017, when she declined a change in her depression medication in November 2018, and when plaintiff reported her treatment was helpful and she appeared alert, oriented, presented appropriately, and that her insight and judgment were intact in March and May of 2019. (Tr. 23-27, citing Tr. 430, 437, 568, 956, 968.) The ALJ also relied on reports from February, March, and May 2020 where plaintiff was again alert, oriented, presenting appropriately with intact insight and judgment, and reportedly doing well on medication. (Tr. 27-28, citing Tr. 1712, 1723, 1748.) Based on those instances of improvement, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 28.)

Page 10 – OPINION AND ORDER

This court's review of the record shows that the ALJ's finding is supported by substantial evidence. Plaintiff's mental health records before she began engaging in therapy at the end of December 2019 are sparse. Although plaintiff testified to suffering from depression and anxiety since 2015, plaintiff also testified that her mental health only started to significantly affect her day-to-day life in 2018. (Tr. 61.) From July to September in 2016, plaintiff was medication noncompliant for two months without explanation. (Tr. 437.) At her December 2016 checkup, after she had resumed taking medication in September, she increased her dosage of Buspar. (Tr. 436.) The ALJ also noted that plaintiff declined a medication change in November 2018. (Tr. 25, citing Tr. 568.) However, plaintiff declined the change for "right now," and considered changing it in the future. (Tr. 568.) A follow-up appointment in January 2018 showed that plaintiff complained of worsening depression, that Lexapro was no longer effective, and that she presented as depressed and tearful. (Tr. 563.) Although plaintiff stated that she felt better on Zoloft in March 2019, she also said that she was depressed most of the day almost every day for over a year and experienced insomnia, fatigue, anxiety, and had recently experienced a panic attack. (Tr. 956.) Two months later, in May, plaintiff complained of worsening anxiety and increased her Zoloft dosage. (Tr. 965.) Plaintiff was given a referral to therapy in June 2019, but did not begin seeing a therapist until December 2019. (Tr. 971, 1682.) From February to May 2020, plaintiff reported doing well on medication, making marked improvements in her depression and anxiety, and no longer experiencing consistent symptoms of depression. (Tr. 1730, 1734, 1736, 1741, 1744, 1748, 1751.) Although plaintiff did suffer setbacks due to going off medication and treatment from June to August due to issues related to her physical health,

once she resumed treatment, she started slowly improving again through December. (Tr. 1763, 1767, 1785, 1791, 1794.)

The ALJ's findings are supported by substantial evidence and are a reasonable interpretation of the record; the ALJ appropriately discounted her subjective symptom testimony on this basis.

### 3. Inconsistent Statements

The ALJ discounted plaintiff's subjective symptom testimony based on alleged inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole reason for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ discounted plaintiff's subjective symptom testimony based on her reports of needing to use a cane. (Tr. 28.) According to plaintiff's function report from 2018, she has used a cane since her hip replacement surgery in 2016, but only when she feels "unsteady." (Tr. 327.) At the 2021 hearing, plaintiff testified that she had been using a cane on and off for about four years, and steadily for the past year. (Tr. 59.) She said that she does not use it in her home because she can lean on other things. (Tr. 59.) The ALJ discounted plaintiff's testimony because the cane is not medically necessary, was used for a short time, and she could ambulate fully without it. (Tr. 28, citing Tr. 949, 1077.) The ALJ's reasoning, however, is not fully supported. Plaintiff testified she has been using a cane on and off since 2016 and steadily throughout 2020, and the ALJ relied only on two reports from 2019. (Tr. 949, 1077.) Thus, the ALJ's reasoning is not backed by substantial evidence and the ALJ erred in relying on this reason to discount plaintiff's testimony.

### 4.    Fibromyalgia

As noted above, the ALJ found that plaintiff's fibromyalgia was not severe at step two. As plaintiff correctly contends, under SSR 12-2p, the ALJ is required to consider her fibromyalgia-related symptoms when assessing her RFC. *See Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) ("In evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p."). Here, the ALJ failed to do that, and that failure is error. *See* SSR 12-2p, *available at* 2012 WL 3104869, at 6 (discussing that when assessing a claimant's RFC, "we will consider a longitudinal record" of the claimant's fibromyalgia because symptoms may "wax and wane so that a person may have 'bad days and good days'").

### 5.    Symptom Testimony Summary

The ALJ erred in rejecting plaintiff's subjective symptom testimony based on her inconsistent statements about using a cane and her activities of daily living. Conversely, the ALJ appropriately discounted plaintiff's testimony about her mental health limitations, including her reported depression and anxiety because she improved with treatment. That sole rationale, however, does not amount to clear and convincing reasons to discount plaintiff's subjective symptom testimony here. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (holding ALJ may not discount claimant's testimony solely because it is not substantiated by objective medical evidence).

\ \ \ \ \

 \ \ \ \ \

**C.**     ***Dr. Blunda's Medical Opinion***

In assessing plaintiff's RFC, the ALJ found unpersuasive the medical opinion of Megan

Blunda, M.D., plaintiff's primary care physician, that plaintiff's impairments precluded an eight-

hour workday. (Tr. 30.) In the ALJ's view, there was little support in the record for Dr. Blunda's

position that claimant could sit for less than three hours; stand/walk for two hours; lift less than

15 hours; carry less than ten pounds; needed to alternate positions every one to 20 minutes; could

occasionally use her right hand, and less than occasionally use her left hand, bend, reach, and

stoop; and that plaintiff would be absent from work for more than six days per month. (*Id*.) That

is because of plaintiff's normal gait, lack of display of significant pain behaviors; no joint

deformities, misalignment, instability, or atrophy; five out of five strength; and ability to transfer

independently from sitting to standing. (Tr. 30-31.)  Further, the ALJ observed that Dr. Blunda's

treatment records showed a normal physical examination and that the limitations noted by Dr.

Blunda were "as reported by claimant." (Tr. 30.)

For disability claims filed on or after March 27, 2017, new regulations for evaluation

medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical*

*Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan

18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but

instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The

new regulations eliminate the hierarchy of medical opinions and state that the agency does not

defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly

irreconcilable with our caselaw according special deference to the opinions of treating and

examining physicians on account of their relationship with the claimant.") Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(c)(b), 416c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence.").[3] *Id.*

Plaintiff asserts that the limitations the ALJ presumably dismissed as "reported by the claimant" to her doctors were in fact well supported by objective MRI evidence and that the finding "normal physical examination" was an instance of cherry picking from the record. (Pl.'s Br. at 11.) According to plaintiff, any normal clinical examination findings were far outweighed by the "profoundly abnormal" diagnostic imaging. (*Id*.) Finally, plaintiff asserts that the finding that plaintiff "did not display significant pain behavior" is belied by the record indicating years of severe pain. (Pl.'s Br. at 12.)

The court disagrees: the ALJ's findings are supported by substantial evidence and are sufficient explanations for discounting Dr. Blunda's opinion.

For example, a review of the record shows that Dr. Blunda's physical examinations of the plaintiff revealed mostly normal findings. At plaintiff's first meeting with Dr. Blunda in May 2019, plaintiff complained of chronic pain in her neck and back, had diffuse bulging disks, and was positive for joint pain. (Tr. 963, 968.) Dr. Blunda's physical examinations showed plaintiff had normal range of motion in her neck and normal range of motion in her upper and lower extremities. (Tr. 978.) In July, Dr. Blunda found on examination that plaintiff had 5/5 strength and 5/5 hip and knee flexion, dorsiflexion, plantarflexion, and knee extension, with a normal gait and normal rapid alternating movements. (Tr. 1217.) In August, the last examination before Dr. Blunda provided her physical capacity assessment, Dr. Blunda described that plaintiff had an

---

[3]    Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

antalagic gait due to the surgical boot she was wearing, as well as limited back flexion with pain associated with bending forward. (Tr. 1222, 1225.) Dr. Blunda also noted that she completed the disability paperwork "according to patient's report of her abilities." (Tr. 1222.) Based on the inconsistency between Dr. Blunda's own records and the physical capacity assessment, the ALJ reasonably concluded that the opinion was not persuasive.

Dr. Blunda also relied on the reports from Nancy Maloney, M.D., and Mark Belza, M.D., when making her physical capacity assessment. (Tr. 1055.) Dr. Maloney established pain management care with plaintiff in June 2019. (Tr. 1062.) Dr. Maloney noted that plaintiff presented with no significant pain behaviors, had normal head position, normal shoulder/pelvic level with no abnormal spinal curves, and that she shifted to the right when standing because of left foot pain when weightbearing. (Tr. 1065.) Plaintiff also had normal gait, performed the chin tuck maneuver without difficulty, had no abnormal vertebral motion when tested in flexed, neutral, and rotated positions, and no joint deformities, misalignment, instability, or atrophy in her neck, back, scapulae and upper extremities. (Tr. 1065.) There were no muscle spasms or spinous process tenderness. (Tr. 1065.) Plaintiff also had 5/5 strength throughout, no impairment in bilateral upper extremity movement, normal reflexes, and could transfer independently from sitting to standing. (Tr. 1065.) In August, plaintiff was negative for joint and muscle plain with no significant pain behaviors, had normal head position and spinal curves with normal gait, but was also noted to have intractable pain. (Tr. 1227.)

Dr. Belza treated plaintiff for cervical and lumbar surgeries in 2001, 2006, and 2007, but did not see plaintiff again until June 2019, on a referral from Dr. Blunda. (Tr. 1077.) Plaintiff presented to Dr. Belza with complaints of neck and back pain, but upon examination plaintiff's

motor strength was normal in upper and lower extremities. (Tr. 1077.) Plaintiff also had poor

range of motion, had a positive compression test, and was tender in paraspinals lumbar and

sacral region. (Tr. 1078.) According to a reviewed MRI, she also had a loss of disk space height

and significant derangement of her L3-L4 segment. (Tr. 1078.)

Be that as it may that plaintiff's abnormal MRI findings provide some support for greater

limitations than assessed in her RFC, that alone is not enough to support the extreme limitations

in Dr. Blunda's assessment. The relatively benign physical findings in the records from Drs.

Blunda, Maloney, and Belza also do not support Dr. Blunda's extreme limitations, and the ALJ's

determination that Dr. Blunda's opinion is inconsistent with the other medical evidence is

supported by substantial evidence. Therefore, the ALJ reasonably concluded Dr. Blunda's

assessment was unpersuasive; the ALJ did not err in evaluating Dr. Blunda's opinion.

**D.    *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a

finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141

(9th Cir. 2014). Whether an action is remanded for an award of benefits or for further

proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d

1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court

conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that

analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons

for rejecting evidence; (2) the record has been fully developed and further proceedings would

serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the

ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d

Page 18 – OPINION AND ORDER

403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that a remand for further proceedings is the proper course here because the ALJ failed to adequately explain why she discounted plaintiff's subjective symptom testimony, failed to adequately assess plaintiff's fibromyalgia at step two, and failed to properly evaluate Dr. Blunda's medical opinion. As discussed above, the ALJ did not err at step two and properly rejected the medical opinion of Dr. Blunda. However, the ALJ erred in evaluating plaintiff's subjective symptom testimony, which necessarily results in an incomplete RFC and step-five finding. As such, the issue of plaintiff's RFC remains unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made.) Such an error is "not inconsequential to the ultimate nondisability determination." *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

On remand, the ALJ shall offer plaintiff the opportunity for a *de novo* hearing, take any further action needed to complete the record, and issue a new decision. The ALJ will reevaluate plaintiff's alleged symptoms, including her fibromyalgia symptoms, and incorporate that testimony into the RFC, or provide with clear and convincing reasons why that testimony is rejected. As warranted, the ALJ will reevaluate plaintiff's RFC and obtain supplemental VE evidence if necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

**CONCLUSION**

For the above reasons, the court REVERSES the Commissioner's final decision and

REMANDS this case for further proceedings.

ORDERED on October 27, 2023.

_____
JEFF ARMISTEAD
United States Magistrate Judge